## STULTS v. HUNTINGTON WATER-WORKS COMPANY ET AL.

### [No. 4,726. Filed May 24, 1904.]

JUDGMENT.—*Res Judicata.—Waters and Watercourses.—Riparian Rights.—Diversion of Water.*—Plaintiff sued defendant city and the trustees of the water-works company supplying the city with water for damages for the diversion of water from his mill, as for a permanent injury, and recovered judgment against the water-works trustees for damages. Thereafter, while said judgment remained in full force and unappealed from, plaintiff filed a complaint alleging the removal of the obstruction and the intake pipes alleged in the original complaint to have been placed in the river, and that defendants had surrendered to plaintiff the physical possession, occupancy, and use of the water of the stream, but that they still insisted that they had the right to enter upon the channel,

Stults *v.* Huntington Water-Works Co.

construct such works as they might deem necessary, and locate intake pipes, and that such claim was a cloud on plaintiff's title, asking that defendants be enjoined from constructing works for the diversion of water from the river, and that plaintiff's title to the use and enjoyment of the uninterrupted flow of the stream be quieted. *Held,* that plaintiff was not entitled to the relief demanded because of the adjudication of the rights of the parties in the former action.

From Huntington Circuit Court; *S. M. Sayler,* Special Judge.

Suit by Cyrus D. Stults against the Huntington Water-Works Company and another. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*M. L. Spencer* and *W. A. Branyan,* for appellant.
*U. S. Lesh, Eben Lesh* and *J. B. Kenner,* for appellees.

Black, C. J.—The appellant sued the appellees, the Huntington Water-Works Company and the city of Huntington. In the original complaint, filed August 14, 1895, the appellant sought the recovery of damages for the alleged diversion of water of the Wabash river from his mill, offering and consenting that the decree herein might confirm the title of the water-works company to the right to divert the water from the river appropriated by it upon the payment of the value thereof, and demanded judgment for $3,000, which was alleged to to be the value of the title and right in fee to divert the water from the river.

A supplemental complaint was filed September 21, 1901, alleging the removal of the obstruction and the intake pipes alleged in the original complaint to have been placed in the river, and that the appellees, within a year after the filing of the original complaint, had surrendered to the appellant the physical possession, occupancy, and use of the water of the stream, and had not since that time diverted or attempted to divert the water from the channel, but alleging that they still insisted that they had the right to enter upon the channel, construct such works as they might deem necessary, and locate intake pipes, and that such claim is

a cloud on appellant's title, and injures the sale of his riparian rights; the prayer of the supplemental complaint being that the appellees be forever enjoined from constructing works to be used for the diversion of water from the river, and from diverting such water from its natural course, and that the appellant's title to the use and enjoyment of the uninterrupted flow of the stream be quieted. Answers and replies were filed, but the only question presented to us was raised by the appellant's exceptions to conclusions of law stated by the court upon the facts set forth in a special finding.

The facts were found substantially as follows: In the year 1876, David P. Clark was the owner in fee simple and in possession of the mill, mill site, and the dam appurtenant thereto, described in the complaint, and continued in such ownership, use, and occupancy until April, 1891, when he died intestate, and the property descended to his heirs at law, who, August 6, 1892, sold, and by warranty deed conveyed, all his property to the appellant, and placed him in possession thereof, and he owned, held, and occupied the property under such conveyance until 1897, when he conveyed one-half thereof to one Fred Dorsch by deed of general warranty, and the appellant and his grantee had continued to hold the same as tenants in common up to the date of the finding. The appellant and his grantors for more than thirty years had owned and used the water-power created by the dam mentioned in the complaint continuously, except as complained of in this action, and the same was necessary to provide power for running the mill. In 1890, the Huntington Water-Works Company, a corporation, was organized, and acquired, by condemnation, land about one-half mile east of the mill on the north bank of the river, fronting on the river about two thousand feet, and within the back flow of the appellant's mill-dam, and erected a water plant, composed of machinery and wells, for the purpose of furnishing water for the use of the in-

habitants of the city of Huntington. Clark was not a party to these condemnation proceedings. The water-works company, September 1, 1890, sold and turned over the property to the city by conveyance to the board of water-works trustees, and by the discontinuance and abolition of the water-works trustees by the legislature the city became vested of the property. The appellant, by virtue of his ownership of the mill and land described in the complaint, was entitled to the use of the water for the purpose of propelling his mill, and "the defendant, by virtue of her ownership of the land abutting on the Wabash river above the land and mill of the plaintiff, who had constructed a water-works plant for the purpose of furnishing water to the city of Huntington and the public for domestic uses and also for the extinguishing of fires, cleansing of sewers, and to the Erie railroad for washing engine boilers, and furnishing motive power to printing establishments, and such other commercial uses as are customary in cities of ordinary size and population, was also entitled to and did use the water from the said Wabash river." After the organization of the water-works company it obtained some two thousand feet frontage on the river, a half mile above the mill, and established a water-works plant on this ground, and had operated the same ever since, the plant costing some $50,000, in boiler, engines, and pumping apparatus, and the operation thereof being at a large expense; and the city, ever since acquiring the same, had been furnishing water to its citizens for domestic purposes, and for the protection of the public in extinguishing fires, cleansing sewers, sprinkling streets, and other public uses.

After the water-works company had acquired the land above mentioned, and before it had expended any money, the company, by its president, duly authorized to do so, had a conference with Clark, then the owner of the mill and mill site, from whose heirs the appellant derived his title, and informed Clark that it would be necessary to draw

water from the Wabash river at the point where the works were located; whereupon, at that time, Clark consented for the water-works company to do so, but he afterward refused to give his consent in writing, and frequently thereafter he saw that such water was being taken from the river at that point, about one-half mile from his mill, and made no objection thereto. Upon the strength and authority of the condemnation, the water-works company expended large sums of money upon said grounds by constructing a power-house and pumping-station and placing its engines, boilers, and pumping apparatus thereon, "which at this time amounted to $50,000, all of which was done with the knowledge of said Clark, knowing that water was being drawn from the Wabash river." The appellant owned the mill and mill site for a year without making any objection to the taking of water from the Wabash river, knowing that water was then being taken from the river for domestic purposes at that point. During the summer and fall of some years the supply of water is greatly reduced by reason of dry weather, and the stream shrinks to such an extent that there is not sufficient water to afford power to run appellant's entire mill, but at such times, when the water is permitted to flow unobstructed to appellant's dam, sufficient power is furnished to run a part of the mill eight to ten hours per day.

August 14, 1893, the appellant filed in the court below his complaint against the city of Huntington, appellee, and Jacob Speaker, Samuel Buchanan, Adam Penfield, William Ewing, and Thomas C. Ewing, alleging that he was the owner of the property described in his complaint herein, and describing the dam and the water power created thereby, and alleging that he was in the use and enjoyment thereof for the purpose of supplying power to his mill, and that the entire flow therein was necessary to supply sufficient power to his mill, and that the defendants for fifteen months prior thereto had wrongfully and continuously, over his objections and protests, diverted a

large portion of the water flowing in this stream, to wit, three-fourths thereof, by which he was deprived of the use of his mill, and that he was unable to run his mill as he otherwise might and would have done; and he further averred that the continued diversion of the stream and use by the defendants of the water therefrom was a great injury to him, and had caused irreparable damage to him, in that by reason of such diversion he had been, and was still, and would still continue for an indefinite time to be, unable to run his mill, and that he could not therefore supply his customers with the product of his mill, and had lost and would lose other of his customers, entailing a great loss of trade and all the profit derived therefrom, as well as loss of time of himself and salary of his employes, and that loss would result by reason of his machinery standing idle, "all aggregating the sum of $3,000."

The individual defendants separately answered this complaint by a general denial. The city answered that the individual defendants were the trustees and employes of the Huntington Water-Works Company, a corporation separate and distinct from the city, and that the city in no way assumed the control of that company or of its officers. The defendants Penfield, Ewing, and Elvin in a joint answer alleged that they were the trustees of the Huntington Water-Works Company, and that they were not connected with a municipal corporation, except as provided by the statutes, and as said water-works company was organized for the purpose of furnishing to the people of the city of Huntington water for ordinary uses of inhabitants thereof; and, further, that its predecessors, also known as the Huntington Water-Works Company, appropriated a tract of land along the north bank of the Wabash river above the plaintiff's mill and dam, and that the power house and machinery of said company were located on said tract, and that prior to such location the defendants called upon Daniel P. Clark, who then owned the mill and mill site, and the water privileges

appurtenant thereto, and that Clark authorized and acquiesced in their taking from the stream all the water they might need for the use of the people of the city, and that the water-works company thereupon erected its plant, expending $50,000 thereon, relying on the right and grant and acquiescence of Clark, and had owned and operated the same ever since. And the plaintiff in said suit replied by general denial to these paragraphs of special answer. The issues so joined in that suit were tried in the court below, and a judgment in favor of the plaintiff was rendered for damages in the sum of $125, as against the individual defendants Ewing, Plainfield, and Elvin, and in favor of the other defendants, which judgment remains in full force, unappealed from, and unreversed, and the amount thereof was paid soon after the rendition thereof. The court further stated in the special finding that the issues in the cause in which judgment was so rendered were the same as the issues in the case at bar; that the appellee the city of Huntington recovered upon the trial of that cause a judgment against the appellant, which has never been set aside, modified, or appealed from, and which is a valid and subsisting judgment.

It was further found herein that there was erected in the Wabash river an embankment, or dam, for the purpose of raising the water to a volume such that pipes could draw it for the purpose of conveying it to the inhabitants of the city; that this dam, or embankment, was washed out and was replaced substantially in 1895 as it had been in 1893; and the dam made in 1893, and replaced in 1895 by the water-works company, was washed out, and there now is no dam in the river where those of 1893 and 1895 were located, "nor has there been since November, 1895." The dam of 1895 was erected without the consent of the appellant. About June 14, 1895, "said defendant," by its agents and officers, constructed a dam across the channel of the river

completely obstructing the flow thereof, and depriving the appellant of the entire stream by pumping the same from the channel and forcing it into the city, and permanently diverting the water taken from the stream from that date until the commencement of this suit, August 14, 1895. The dam was substantially like that erected in 1893. There have been no intake pipes in the river since 1897. During the period from June 14, 1895, to the commencement of this suit, August 14, 1895, the river supplied sufficient water to run one of appellant's water-mills eight hours a day, but by reason of the diversion no water came to the mill, and he was entirely deprived of the use of the stream during that period.

It was further found that the appellees diverted water and sold it for a consideration for various purposes, namely, to furnish motive power for running machinery in printing establishments, for supplying engines and boilers of a railroad company named, for running fans and beer pumps in saloons and shops in the city, and for the ordinary domestic uses of the city, and the water was returned to the stream below the appellant's mill; that the appellees did not use any water during the time covered by the pleadings herein, except for domestic and the ordinary and usual uses in a city of ordinary size and population; and that during the period of the diversion of water, from June 14, 1895, to August 14, 1895, the rental value of appellant's mill was $35 per month, while if the water had been permitted to flow to the mill the rental value thereof would have been $70 per month.

The court stated as its conclusions of law that the damage complained of in this action was finally determined and adjudicated in the prior suit mentioned above; that "the defendant," as a riparian owner, had a right to use the water taken by it from the river for the purposes set out in the finding; that the appellant is not entitled to have a

judgment quieting title in him to the flowing of the stream; that he should take nothing by his suit; and that the appellees should have judgment for costs.

There is some obscurity in the special finding, but it appears that in the former action mentioned in the finding, the adjudication did not involve merely the recovery of damages for injury sustained by the diversion of water prior to the commencement of the action, and that the obstruction and pipes in the river were not treated merely as temporary and removable, but the plaintiff, proceeding upon the theory that the diversion, with the means provided therefor, constituted a permanent injury to his alleged right as owner of the water-power, put in litigation the question as to the amount of his damages past and future arising out of an unchangeable condition. The recovery in that case necessarily involved the right of the defendants to maintain permanently the condition for the existence of which full damages were sought and adjudged.

In the original complaint in the case at bar substantially the same relief was sought. The dam or obstruction erected in 1895 was substantially the same as that involved in the former suit, the right to maintain which was secured by that adjudication. The parties, too, were the same, or, so far as they were not identical, those in the case at bar were successors to the rights of parties to the former suit, and against them the plaintiff could not assert a claim for damages which had been adjudicated in such prior suit, and satisfied by payment.

We need not discuss the question as to the proper effect of the consent of the owner of the mill, and his standing by while the expensive structures were being made for the diversion of the water. That question was one belonging to the former suit, and however decided, was involved in the judgment therein.

In the supplemental complaint the appellant alleged the removal of the obstruction and pipes which caused the in-

jury of which he complained in the original complaint, and stated that the appellees had surrendered to him the physical possession, occupancy, and use of the water, and had not since such removal diverted or attempted to divert the water. It was not alleged that they were proposing or threatening again to invade the channel, but it was alleged merely that they were insisting that they still had the right to do so, and against this claim he sought an injunction and the quieting of his title. The special finding does not show that the appellees were in fact asserting any claim of right to rebuild the obstruction which had been twice washed away, and which seems, therefore, to have proved impracticable; but, aside from this failure of the finding to support the averments of the supplemental complaint, it seems sufficiently plain that the appellant could not have the relief which he sought in the supplemental complaint because of the adjudication of the rights of the parties in the former action.

Judgment affirmed.